IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| CINDY STANLEY,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>LIFE INSURANCE COMPANY OF NORTH AMERICA,<br><br>　　　　　　Defendant. | ORDER & MEMORANDUM DECISION<br><br><br><br>Case No. 2:03-CV-788 TC |

This matter is before the court on the parties' cross motions for summary judgment on the issue of whether Plaintiff Cindy Stanley is entitled to benefits under an ERISA employee welfare benefit plan providing accidental death and dismemberment benefits. Ms. Stanley also seeks attorneys' fees and costs.

For the reasons set forth below, the court GRANTS Defendant Life Insurance Company of North America's Motion for Summary Judgment and DENIES Plaintiff's Motion for Summary Judgment.

## BACKGROUND

### Procedural History

Ms. Stanley, a Questar employee, was in a car accident in June 2000. She suffered some injuries from the accident, including cervical strain and whiplash. Her treating physician says she also developed post-traumatic fibromyalgia as a direct result of the car accident. As a result of her injuries, Ms. Stanley claims she is permanently and totally disabled. She filed a claim for

benefits with Defendant Life Insurance Company of North America ("LINA") under Questar's accidental death and dismemberment ("AD&D") policy. LINA denied Ms. Stanley's claim, stating that her "loss" was not caused solely by the car accident, which is a prerequisite to obtaining benefits under the AD&D policy. (Administrative Record, attached as Ex. A to Aff. of Sandra Townsend, attached as Ex. 2 to Def. Mem. Supp. Def. Mot. Summ. J. ("Admin. R."), at 40.) As an additional ground for denial of benefits, LINA stated that Ms. Stanley suffers from a "sickness, disease, or bodily infirmity" which is not covered by the AD&D policy. (Id.)

Ms. Stanley appealed LINA's denial of coverage pursuant to the ERISA plan requirements. Dr. Lee W. Vance, a physician hired by LINA, reviewed Ms. Stanley's medical records and concluded that she was not permanently and totally disabled as a result of the car accident. Her appeal was denied. She then filed suit in state court, and LINA removed to federal court on the basis that ERISA preempted Ms. Stanley's state law claims. The court denied Ms. Stanley's motion to remand to the state court. Now the case is before the court on cross motions for summary judgment.

## Ms. Stanley's Medical History

Ms. Stanley's medical history and the specific cause of her alleged disability are central to the current motions. Dr. Patrice Hirning has been Ms. Stanley's treating physician since 1992, well before the car accident which triggered Ms. Stanley's request for coverage under the AD&D policy. Dr. Hirning is one of a number of physicians who have treated and diagnosed Ms. Stanley over the years. In a November 1, 2002 letter pertaining to Ms. Stanley's claims under the AD&D policy, Dr. Hirning wrote that she had treated Ms. Stanley for injuries sustained in the car accident and that "as a direct result of the injuries that she sustained in the June 23, 2000 automobile accident Ms. Stanley became totally and permanently disabled." (Admin. R. at 61.)

Dr. Hirning also wrote that Ms. Stanley "will be totally disabled for the remainder of her life and unable to perform work of any kind." (Id.)  The determination that Ms. Stanley is totally and permanently disabled is supported by the conclusions of other treating physicians and the extensive medical records and notes contained in the Administrative Record. (See, e.g., December 12, 2002 Comments of Dr. James Woessner, Admin. R. at 62.)

On Ms. Stanley's "Proof of Loss" form submitted in an effort to obtain coverage, Dr. Hirning wrote that she had diagnosed Ms. Stanley with post-traumatic fibromyalgia and affirmed that this "loss" was the direct result of injuries sustained in her car accident.  (Proof of Loss Physician's Certificate, Admin. R. at 204.)

In making its decision to deny coverage, LINA asked Dr. Lee W. Vance to perform a medical record review of Ms. Stanley's medical history and to opine as to the cause of her disability.  Dr. Vance reviewed numerous records and reports related to Ms. Stanley's medical history including Dr. Hirning's office notes dating from October 12, 1998, to June 12, 2002. (Admin. R. at 41.)[1]   Dr. Vance specifically addressed Ms. Stanley's disability in the context of her history of complex and serious medical and emotional issues.  (Id. at 42-44.)  Dr. Vance summarizes Ms. Stanley's general medical condition in his report, writing that she has:

> a history of hypertension, dysthymia, atypical chest pain, nausea, edema, low back pain with recurrent sciatica, obstructive sleep apnea, obesity, menopausal symptoms, degenerative joint disease, particularly involving the lumbar spine, but not necessarily limited to it, seborrheic dermatitis with significant pruritus, paresthesias, and chronic dizziness.

(Admin. R. at 42.)  Dr. Vance's review also considers the specific diagnoses of Ms. Stanley's

---

[1] Dr. Vance also reviewed the follow-up evaluation by Dr. James Woessner; consultation notes from Dr. Peter C. Nielsen, Dr. Todd Allen, Dr. Patrice Duvernay, Dr. Lucinda Bateman, and Dr. Richard Rosenthal, radiology reports from David C. Hardy, and other medical records pertaining to Ms. Stanley. (Admin. R. at 41.)

other treating physicians.

Dr. Richard Rosenthal, a physician at the Origin Pain and Spine Center, examined Ms. Stanley in October of 2000. Dr. Rosenthal found that, as a result of the accident, Ms. Stanley "likely suffered a whiplash-type injury with probable cervical strain of ligaments." (Admin. R. at 462.) Dr. Rosenthal noted:

> The damaged ligaments would be expected to heal in about six weeks. This patient's somatic coping style[2] results in delayed recovery and over-generalization of symptoms. Unfortunately accidents do not damage only bones and ligaments. Instead they happen to people. All of us have developed a method for coping with stress, be it physical or psychological. The [motor vehicle accident], in this person, has resulted in a myriad of physical complaints. Are these complaints a direct result of the accident? In this individual I would have to say yes.

(Id.) Dr. Rosenthal also stated that Ms. Stanley's "somatic coping style results in generalization of symptoms throughout her body obscuring symptoms directly resulting from the accident . . . . [and] in delayed recovery and over generalization of symptoms." (Id. at 465.)

In an October 31, 2000 letter, Dr. Lucinda Bateman, an internal medical physician at the Fatigue Consultation Clinic in Sandy, Utah, wrote that she had diagnosed Ms. Stanley with fibromyalgia and chronic fatigue syndrome after Ms. Stanley's car accident following a "comprehensive fatigue consultation." (Admin. R. at 449.) Dr. Bateman concluded that the car accident "was crucial in triggering symptoms of [fibromyalgia and chronic fatigue syndrome]." (Admin. R. at 449.)

Dr. Vance, the physician hired by LINA, wrote that Dr. Bateman's conclusions were:

---

[2] The court notes that "cope," in a medical context, is defined as: "An act that enables one to adjust to the environmental circumstances." Steadman's Medical Dictionary 407 (27th ed. 2000.) "Somatic" is defined as: "Relating . . . to the body in general." Id. at 1655. In light of these definitions and Dr. Rosenthal's usage, when Dr. Rosenthal refers to Ms. Stanley's "somatic coping style," the court reads it to mean that Ms. Stanley physically manifests the stresses of her life and environment.

>supported by a history of fatigue, regional neck, shoulders, arm, and low back, and generalized . . . pain, mixed headaches, un-refreshed disturbed sleep, and cognitive and mood problems including both poor concentration and depression. In addition, it was associated with the onset of irritable bowel syndrome, irritable bladder syndrome, various kinds of dizziness . . . .

(Id. at 44.)  He then wrote: "I concur with Dr. Bateman that fibromyalgia often occurs after people have experienced head or neck trauma, prolonged stress from abuse, multiple surgeries, or family problems . . . and [Ms. Stanley] had been through all of these stresses." (Id.)  Dr. Vance also noted that it was clear that Ms. Stanley had a worsening of her symptoms following the car accident.

Dr. Vance concluded that Ms. Stanley suffers from "severe disabling <u>Fibromyalgia syndrome</u> with <u>chronic fatigue</u> and a proclivity to somatize her inability to cope emotionally and psychologically with a [sic] multiple stresses of her life." (Id. (emphasis in original).)  This conclusion is consistent with the diagnoses of Dr. Hirning, Dr. Bateman, Dr. Rosenthal and Dr. Woessner.  Dr. Vance, however, clarified that Ms. Stanley's condition:

>predated her accident.  She had multiple stressors prior to the accident which caused depression, which was diagnosed before the accident but seemed to be exacerbated by the accident.  Her fibromyalgia seems similarly to have predated the accidents but wasn't caused by it, merely exacerbated by it.

(Id.)  Looking at the question of whether Ms. Stanley's car accident was directly responsible for her fibromyalgia, Dr. Vance's opinion was that the "portion of her disability directly attributable to her accident is only that portion regarding her neck pain and whiplash injury . . . ." (Id. at 45.) Further, Dr. Vance wrote: "All other previous and subsequent studies lend support to the fact the patient's health was influenced by all the conditions . . . in her past history.  It is my belief the [motor vehicle accident] may have exacerbated her symptoms, but did not cause them primarily." (Id.)

## ANALYSIS

5

**Standard & Scope of Review**

The parties agree that the employee welfare benefit plan ("the Plan") under which Ms. Stanley seeks coverage does not provide discretion to the decision maker. Accordingly, the court must apply the <u>de novo</u> standard of review in its determination of whether LINA correctly denied Ms. Stanley's benefits. <u>Firestone Tire & Rubber Co. v. Bruch et al.</u>, 489 U.S. 101, 115 (1989).

Under the <u>de novo</u> standard of review, "[t]he court reviews the administrator's decision without deference to that decision and without any presumption of correctness . . . . When a court reviews a decision de novo, it simply decides whether or not it agrees with the decision under review. The court's role is to determine whether the ERISA plan administrator made a correct decision. . . ." <u>Hammers v. AETNA Life Ins. Co.</u>, 962 F. Supp. 1402, 1406 (D. Kan. 1997). The court must interpret the terms of the Plan by "giving the language its common and ordinary meaning as a reasonable person in the position of the [plan] participant, not the actual participant, would have understood the words to mean." <u>Chiles v. Ceridian Corp.</u>, 95 F.3d 1505, 1511 (10th Cir. 1996) (internal quotation marks and citations omitted) (alterations in original). When interpreting the terms of the Plan, the court must "examine the plan documents as a whole and, if unambiguous, . . . construe them as a matter of law." <u>Chiles</u>, 95 F.3d at 1511 (citation omitted).

Because this case is being reviewed <u>de novo</u>, the burden of proof remains with the Plaintiff to prove that she is entitled to coverage by a preponderance of the evidence. <u>Winchester v. Prudential Life Ins. Co. of Am.</u>, 975 F.2d 1479, 1487-88 (10th Cir. 1992). The insurer bears the burden of proving that a limitation or exclusion applies. <u>Blair v. Metropolitan Life Insur, Co.</u>, 974 F.2d 1219, 1221 (10th Cir. 1992); <u>McGee v. Equicor-Equitable HCA Corp.</u>, 953 F.2d 1192, 1205 (10th Cir. 1992) ( "an insurer bears the burden to prove facts supporting an exclusion of

coverage."); Caffrey v. UNUM Life Ins. Co., 302 F.3d 576, 580 (6th Cir. 2002); see also Fought v. UNUM Life Ins. Co. of America, 379 F.3d 997, 1007 (10th Cir. 2004).

Because the court's review is de novo, it may, if necessary, look beyond the confines of the administrative record to make its determination. Hall v. UNUM Life Ins. Co. of America, 300 F.3d 1197, 1202 (10th Cir. 2002). In this case, both sides have presented affidavits along with the administrative record. Accordingly, the court bases its decision on the record presented to it by the parties in their briefs.

### Language Governing Ms. Stanley's Claims

The AD&D policy issued by LINA provides:

> We will pay this benefit if the Insured:
> 1) is injured by an accident covered by this policy; and
> 2) is totally disabled within 30 days after the accident; and
> 3) is totally disabled for 12 straight months; and
> 4) is then permanently totally disabled.

(Admin. R. at 18.) LINA relies primarily on limiting language in the AD&D policy which it contends excludes coverage for Ms. Stanley's disability. The AD&D policy states:

> We agree to pay benefits for loss from bodily injuries:
> (a)  caused by an accident which happens while an insured is covered by this policy; and
> (b)  which, directly and from no other causes, result in a covered loss.
>
> We will not pay benefits if the loss was caused by:
> (a)   sickness, disease or bodily infirmity . . . .

(Admin. R. at 17 (emphasis added).) In addition to its inclusion in the AD&D policy, this language was also included in a 1999 Catastrophe Accident Insurance Program Brochure distributed to all enrolled participants on August 1, 1999. Ms. Stanley was an enrolled participant in the Plan at that time and presumably received a copy of the Catastrophe Accident Insurance Program Brochure. The Summary Plan Description ("SPD") summarizing the plan's

benefits does not contain this limiting language.

Ms. Stanley contends that she is not bound by the limiting language in the AD&D policy because the SPD did not contain the limiting language and because she did not have notice of this limitation on eligibility for benefits.[3] Ms. Stanley's position is that the language of the SPD trumps the language of the AD&D policy. The court disagrees.

The SPD specifically contained a disclaimer in the "Exclusions" section that reads: "[t]his section of the [employee] handbook only outlines the catastrophe accident insurance coverage in general terms. The group policy, and not the foregoing summary, governs the terms and conditions under which insurance will be provided. In the case of any conflict, the group policy will be controlling." (Questar Handbook, attached as Ex. 1 to Mem. Supp. Def. Mot. Summ. J., at 6.) Contrary to Ms. Stanley's contention, this disclaimer language is not hidden in the SPD and therefore has effect. Tenth Circuit case law specifically states that where there is a conflict between the SPD and the Plan, the Plan governs, particularly if there is a disclaimer, as in this case. See, e.g., Nance v. Sun Life Assur. Co. of Canada, 294 F.3d 1263, 1272 (10th Cir. 2002); Stamper v. Total Petroleum, Inc. Retirement Plan, 188 F.3d 1233, 1243 (10th Cir. 1999); McGee v. Equicor-Equitable HCA Corp., 953 F.2d 1192, 1201-02 (10th Cir. 1992).

Accordingly, Ms. Stanley would only be able to avoid the limiting language in the plan if she can show "some significant reliance upon, or possible prejudice flowing from, the faulty plan

---

[3] Citing to the January 24, 2005 affidavit of Melody Richardson, a Questar employee, Ms. Stanley claims that Questar did not have that particular language on hand in its human resources office so she could not have had notice thereof. (See Jan. 24, 2005 Aff. of Melody Richardson, Dkt. 38.) But LINA counters with another affidavit of Melody Richardson, which states that all plan participants received the plan brochure, which did contain the limiting language. (Feb. 24, 2005 Aff. of Melody Richardson, attached as Ex. 1 to Def. Reply Mem. Supp. Def. Mot. Summ. J., at 3.) The court need not reach the question of whether Ms. Stanley had actual notice of the language.

description." Nance, 294 F.3d at 1272 (quoting Chiles). She has not done so here. The only prejudice she points to is that she was denied benefits. A court in the District of South Carolina rejected a plaintiff's claim that adoption of a narrow definition of "disabled" would "shut her out" of plan benefits, writing: "If this is what prejudice requires, then all denial of benefits would result in prejudice." Porter v. Metropolitan Life Ins. Co., 17 F. Supp. 2d 500, 506 (D.S.C. 1998).

The court finds that the policy's language – "directly and from no other causes" – governs the Plaintiff's claim. In Winchester v. Prudential Life Ins. Co. of America, 975 F.2d 1479 (10th Cir. 1992), the court treated similar language as a condition of coverage to be proven by the plaintiff. Winchester, 975 F.2d at 1487-88. Here, Ms. Stanley argues that LINA bears the burden to prove that her disability did not arise "directly and from no other causes" because of the limiting and exclusionary nature of the language. See Fought, 379 F.3d at 1007. Regardless of which party bears the burden regarding this language, the medical evidence presented to the court leaves no doubt that Ms. Stanley's disability did not arise solely from the car accident.

## "Directly and From No Other Causes"

Defendant LINA has argued that the disability for which Ms. Stanley seeks coverage did not arise "directly and from no other causes" than the car accident and, therefore, is not covered under the AD&D policy. Ms. Stanley has responded that this provision is ambiguous and, accordingly, should be construed in Plaintiff's favor in order to find coverage.

The Tenth Circuit, interpreting similar language, has held that:

> all the words "directly and independently of all of the causes" given their plain and ordinary meaning in context of this particular insuring clause, are not ambiguous. In stating "loss must result directly and independently of all other causes from accidental bodily injury," the policy imposes two obvious conditions. First the loss must result directly from accidental bodily injury. Second, the loss must result independently of all other causes. In short, we agree with the district

9

court that the word "directly" modifies the phrase, "from accidental bodily
injury." Any other interpretation in this context is contrived.

Pirkheim v. First UNUM Life Ins., 229 F.3d 1008, 1010-11 (10th Cir. 2000) (emphasis in original).   Similar to Pirkheim, the language here is unambiguous.  Recovery under the AD&D policy is based on the occurrence of a sudden accident that is the sole cause of injuries resulting in disability. Any occurrence other than the June 23, 2000 car accident or any pre-existing medical condition that is found to have contributed to Ms. Stanley's disability precludes coverage.[4]

Dr. Hirning found that Ms. Stanley was totally and permanently disabled, and attributed Ms. Stanley's loss to fibromyalgia.  (Proof of Loss Physician's Certificate, Admin. R. at 204.) There is no dispute that Ms. Stanley suffers from fibromyalgia.  There is also no dispute that Ms. Stanley has had a large number of medical and emotional problems over the course of her life. Consequently, the court looks to whether Ms. Stanley's fibromyalgia arose directly from the car accident and is attributable to no other causes.

In her November 1, 2002 letter, Dr. Hirning wrote: "I believe that [Ms. Stanley's] total disability is permanent and was caused from the motor vehicle accident on June 23, 2000." (Admin. R. at 61.)  The conclusion that Ms. Stanley is totally and permanently disabled is supported by various other reports and diagnoses.  (See, e.g., December 12, 2002 Report of Dr. James Woessner, Admin. R. at 62 ("it is my professional medical opinion that Ms. Stanley is permanently and completely disabled [from] any known productive and gainful employment").)

Dr. Bateman, in her October 31, 2000 report wrote: "It is my opinion that the [motor

---

[4]The fact that Ms. Stanley was found disabled by the Social Security Administration has no bearing here, because there is a substantial difference between being disabled due to a sickness, which is allowed under the SSA disability benefit offerings, and being disabled due to an accident (which an AD&D policy specifically intends to cover.)

vehicle accident] of June 2000 <u>was crucial in triggering symptoms</u> of [fibromyalgia/chronic fatigue syndrome].  As a result of this accident she is in fact experiencing marked disability . . . to the point of being bed ridden much of the time." (Admin. R. at 449 (emphasis added).)  Dr. Bateman's characterization that the accident "was crucial in triggering" the symptoms implies that the accident was not the cause of the disability, but rather that the accident merely brought the condition to the surface.  This is consistent with the conclusions drawn by Dr. Vance from a review of Ms. Stanley's medical history.  Dr. Vance agreed with the determination of Dr. Bateman that Ms. Stanley suffers from fibromyalgia and also agreed that this condition may be triggered by a stressful event such as a car accident.  Dr. Vance wrote, however, that:  "All other previous and subsequent studies lend support to the fact the patient's health was influenced by all the conditions . . . in her past history.  It is my belief the [motor vehicle accident] may have exacerbated her symptoms, but did not cause them primarily." (Admin. R. at 44.)

It is clear that Ms. Stanley suffers from a number of debilitating and disabling conditions including fibromyalgia and chronic fatigue syndrome. Dr. Hirning indicated that Ms. Stanley's condition is directly and solely attributable to the car accident, but her opinion is in the minority. All of the physicians who either treated Ms. Stanley or reviewed her records commented on the extensive emotional and physical trauma she has suffered over a number of years and the majority of those physicians indicated that her fibromyalgia may have been triggered or exacerbated by her car accident, but not that the car accident was the sole cause of this condition. The preponderance of the medical evidence in this case indicates that the car accident triggered or exacerbated Ms. Stanley's fibromyalgia and that the car accident was not the sole and direct cause of her condition.

Accordingly, the court finds that Ms. Stanley is not entitled to benefits under the AD&D

Policy in connection with the June 2000 car accident because the preponderance of the medical evidence indicates that Ms. Stanley's disability did not arise "directly and from no other cause" than the car accident.[5]

**ORDER**

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is DENIED and Defendant's Motion for Summary Judgment is GRANTED.

DATED this 16th day of September, 2005.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
United States District Judge

---

[5] As the court finds that LINA's denial of coverage was proper because Ms. Stanley's disability was not caused solely and directly by the car accident, the court need not examine whether the remaining conditions of coverage are met in this case.